CHOCTAW PROPERTIES, L.L.C.,
Everett B. Frazier and Jerry W.
Campbell, Appellants,

v.

ALEDO I.S.D., and Allen
Norman, Appellees.

No. 10–01–229–CV.

Court of Appeals of Texas,
Waco.

Dec. 17, 2003.

Donald A. Ferrill and Michael L. Forman, Brown, Pruitt, Peterson & Wambsganss, P.C., Fort Worth, for Appellant/Relator.

Thomas P. Brandt, Stephen D. Henninger and Nellis G. Hooper, Fanning, Harper & Martinson, P.C., Dallas, for Appellee/Respondent.

Before Chief Justice GRAY, and Justice VANCE (former Chief Justice DAVIS not participating) *.

## OPINION

BILL VANCE, Justice.

Aledo Independent School District denied Kenneth and Schuyler Cunningham's children admittance to its schools because the Cunninghams' residence lies in another school district. The Cunninghams sued Choctaw Properties, L.L.C. which sold them the property and two of Choctaw's

---

* This case was argued and submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. *See* TEX. R.APP P. 41.1(c).

owners, Everett B. Frazier and Jerry W. Campbell, for misrepresenting the school-district status of the property. Choctaw, Frazier, and Campbell (collectively "Appellants") filed a third-party petition against Aledo, former superintendent Allen Norman, and former Choctaw agent Beau Duncan for declaratory relief, breach of contract, and contribution and indemnity. The trial court granted summary judgment motions filed by Aledo and Norman. Appellants contend in four issues that the court erred by: (1) refusing to rule on their objections to Aledo's and Norman's summary judgment evidence; (2) implicitly overruling their objections, if the court made implicit rulings; (3) granting Aledo's and Norman's first summary judgment motion; and (4) granting Aledo's and Norman's second summary judgment motion.

## BACKGROUND

Choctaw developed the Hills of Bear Creek subdivision in 1996. Choctaw agent Beau Duncan obtained a letter from Norman, then Aledo's superintendent, in April 1996 stating that the subdivision lies within Aledo's boundaries.[1] The Cunninghams purchased a lot in this subdivision from Choctaw in August 1996. They allegedly purchased this lot because Duncan told them that it lay within Aledo's boundaries. The Cunninghams built a residence on the lot, but their children were denied admittance to Aledo schools. The Cunninghams sued Appellants under various theories in-

cluding misrepresentation of the school district in which their lot is located.

■ Appellants filed a third-party petition against Aledo, Norman, and Duncan: (1) seeking contribution and indemnity from Norman and Duncan under the common law, Chapters 32 and 33 of the Civil Practice and Remedies Code, and section 17.506 of the Deceptive Trade Practices–Consumer Protection Act ("DTPA"); (2) alleging that Aledo is estopped from denying that the lot is within its boundaries and seeking a declaratory judgment to this effect; and (3) alleging that Aledo breached an agreement with Choctaw that children residing in the Hills of Bear Creek subdivision would attend Aledo schools.[2]

Aledo filed a plea to the jurisdiction which was denied. We affirmed this decision in a prior appeal. *Aledo Indep. Sch. Dist. v. Choctaw Props., L.L.C.*, 17 S.W.3d 260 (Tex.App.-Waco 2000, no pet.).

Aledo and Norman filed a motion for summary judgment alleging nine different grounds under which they claimed entitlement to judgment as a matter of law. They supported this motion with: (1) affidavits from Duncan, Norman, and Kenneth Cunningham; (2) a letter written by Norman and attached to his affidavit as an exhibit; (3) excerpts from Duncan's deposition; and (4) a copy of section 11.06 of the Parker County Subdivision Regulations and Construction Standards.

1. The letter dated April 2, 1996, reads:
 To Whom It May Concern:
 Hills of Bear Creek, a subdivision containing approximately 150 acres and being located on Pate Road, is within the boundaries of the Aledo Independent School District. The residents of Hills of Bear Creek will therefore pay Aledo Independent School District taxes and the children will attend Aledo Independent School District schools.

2. These are the allegations in Appellants' Second Amended Third–Party Petition. All prior claims and allegations were superceded when Appellants filed this amended pleading. *See* Tex R. Civ. P. 65; *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 339 (Tex.App.-San Antonio 2000, pet. denied); *Randolph v. Walker*, 29 S.W.3d 271, 274–75 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

Appellants raised numerous objections to the affidavits attached to the summary judgment motion. Appellants responded in some detail that Aledo and Norman had failed to conclusively establish their entitlement to judgment on any of the grounds asserted. They supported their response with the affidavits of Donald Ferrill (one of their attorneys), Campbell, and Frazier.

Aledo and Norman then filed a second motion for summary judgment alleging seven additional grounds for summary judgment. To support the second motion, Aledo and Norman used the same summary judgment evidence previously tendered. In addition, they provided a plat showing school district boundaries for the area at issue and supporting documents.

Appellants responded with many of the same objections asserted in response to the first motion. They also objected to the documentary evidence attached to the second motion. They then responded in detail to the grounds asserted in the second motion, again concluding that Aledo and Norman had failed to conclusively establish their right to judgment. They supported their response with the affidavits of Campbell and Frazier (the same ones attached to their first response) and with excerpts from Duncan's deposition.

Aledo and Norman then filed a motion for leave to amend their summary judgment evidence in reply to some of Appellants' objections to the documentary evidence attached to their second motion. After hearing, the court granted this motion and gave Appellants twenty-one days to file any response to the amended evidence. Appellants did so, raising additional objections to this evidence.

Following a second hearing, the court signed an order granting both summary judgment motions without specifying the reasons and dismissing Appellants' third-party action against Aledo and Norman with prejudice. The court severed Appellants' third-party claims against Aledo and Norman from the remaining[3] claims, and this appeal ensued.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

■ Appellants contend in their first and second issues respectively that the court erred by failing to rule on their objections to Aledo's and Norman's summary judgment evidence or by implicitly overruling those objections. "To be considered· by the trial or reviewing court, summary judgment evidence must be presented in a form that would be admissible at trial." *Hou–Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *accord United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30 (Tex.1997); *Columbia Rio Grande Regl. Hosp. v. Stover,* 17 S.W.3d 387, 396 (Tex.App.-Corpus Christi 2000, no pet.). Thus, we address Appellants' evidentiary complaints before addressing the merits. *See Ash v. Hack Branch Distribg. Co.,* 54 S.W.3d 401, 408 (Tex.App.-Waco 2001, pet. denied); *Jensen Constr. Co. v. Dallas County,* 920 S.W.2d 761, 769 (Tex. App.-Dallas 1996, writ denied).

### IMPLICIT RULING

■ "[T]he granting of a summary-judgment motion does not necèssarily provide an implicit ruling that either sustains or overrules objections to the summary-judgment evidence." *Allen ex rel. B.A. v. Albin,* 97 S.W.3d 655, 663 (Tex.App.-Waco

---

3. The remaining claims include Appellants' third-party claims against Duncan and the Cunninghams' claims against Appellants.

2002, no pet.) (citing *Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 317 (Tex.App.-San Antonio 2000, no pet.)); *accord Dolcefino v. Randolph,* 19 S.W.3d 906, 926–27 (Tex. App.-Houston [14th Dist.] 2000, pet. denied).

Aledo and Norman raised multiple grounds for summary judgment in their two motions. Appellants lodged numerous objections to Aledo's and Norman's summary judgment evidence. The court granted both motions without elaboration. We cannot imply a ruling on Appellants' objections from this record. *See Allen,* 97 S.W.3d at 663; *Dolcefino,* 19 S.W.3d at 926–27. Accordingly, we conclude that Appellants' second issue is without merit.

### PRESERVATION

For preservation purposes, objections to "form" and "substance" are treated differently. *Dailey v. Albertson's, Inc.,* 83 S.W.3d 222, 225 (Tex.App.-El Paso 2002, no pet.); *Ahumada v. Dow Chem. Co.,* 992 S.W.2d 555, 562 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 160 (Tex.App.-Waco 1995, no writ). To preserve objections to defects of form for appellate review, the objecting party must obtain a ruling from the trial court, preferably in writing. *See Allen,* 97 S.W.3d at 663; *Dolcefino,* 19 S.W.3d at 926–27; *see also* TEX.R.APP. P. 33.1(a)(2); TEX.R. CIV. P. 166a(f) ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."). This ruling must be obtained at or before the court hears the summary judgment motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 n. 7 (Tex.1993); *accord Dolcefino,* 19 S.W.3d at 926 (party

should obtain ruling "at, before, or very near" the time the court decides the summary judgment motion). On the other hand, defects of substance can be raised for the first time on appeal. *Dailey,* 83 S.W.3d at 225; *Ahumada,* 992 S.W.2d at 562; *Peerenboom,* 910 S.W.2d at 160.

### APPELLANTS' OBJECTIONS

Appellants raised the following categories of objections at trial to the form of Appellees' summary judgment proof: (1) affidavit of an interested witness which is not clear, positive, direct, credible, uncontradicted, or readily controvertible; (2) hearsay; and (3) lack of personal knowledge. *See Grand Prairie Indep. Sch. Dist. v. Vaughan,* 792 S.W.2d 944, 945 (Tex.1990) (lack of personal knowledge); *Crow v. Rockett Spec. Util. Dist.,* 17 S.W.3d 320, 324 (Tex.App.-Waco 2000, pet. denied) (affidavit of interested witness, hearsay, lack of personal knowledge); *Ahumada,* 992 S.W.2d at 562 (interested witness). Because Appellants did not obtain a ruling on their objections to these alleged defects of form, these objections have not been preserved for appellate review. *See Allen,* 97 S.W.3d at 663; *Dolcefino,* 19 S.W.3d at 926–27.

The remaining two categories of objections allege defects of substance: (1) lack of jurat;[4] *Laman v. Big Spring State Hosp.,* 970 S.W.2d 670, 672 (Tex.App.-Eastland 1998, pet. denied); *State Bar of Tex. v. Tinning,* 875 S.W.2d 403, 407 (Tex. App.-Corpus Christi 1994, writ denied); *accord Perkins v. Crittenden,* 462 S.W.2d 565, 568 (Tex.1970) (such an error need not be preserved); and (2) conclusory; *Crow,* 17 S.W.3d at 324; *Cain v. Rust Indus. Cleaning Servs., Inc.,* 969 S.W.2d 464, 467 (Tex.App.-Texarkana 1998, pet. denied);

---

4. The complete absence of a jurat (a substantive defect) must be distinguished from a defective jurat (defect of form). *See Ford Motor Co. v. Leggat,* 904 S.W.2d 643, 645 (Tex.1995).

*Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Appellants did not need to preserve these issues for appellate review. *Dailey,* 83 S.W.3d at 225; *Ahumada,* 992 S.W.2d at 562; *Peerenboom,* 910 S.W.2d at 160.

### ABSENCE OF JURAT

 Appellants objected to Duncan's affidavit because it does not contain a jurat. They contend that this renders his statement unsworn and improper summary judgment proof. *E.g., Laman,* 970 S.W.2d at 672; *Tinning,* 875 S.W.2d at 407. However, they fail to appreciate that his affidavit begins with the following language, "BEFORE ME, the undersigned authority, on this day personally appeared Beau Duncan, who being by me duly sworn, deposed as follows: ..." It concludes with an acknowledgment executed by a notary public.

The Supreme Court has expressly approved such language as adequate to "meet[ ] Texas statutory requirements for affidavits" when combined with an acknowledgement. *Ford Motor Co. v. Leggat,* 904 S.W.2d 643, 645 (Tex.1995); *accord Griffin v. Baylor College of Med.,* 945 S.W.2d 158, 159–60 (Tex.App.-Houston [1st Dist.] 1997, no writ); *Rolen v. Burroughs Wellcome Co.,* 856 S.W.2d 607, 608–09 (Tex.App.-Waco 1993, writ denied).

Appellants also refer to part of Duncan's deposition testimony as evidence that his affidavit was not made under oath. Duncan testified as follows:

Q: All right. Have you ever been under oath before?

A: Yes.

Q: And when was that?

A: During my divorce.

Q: Okay. And any other time, like to sign a document or something, did anybody ever have you raise your hand like you did here today?

A: No, I don't think so. I'm not very sophisticated on this stuff, not very ...

We decline Appellants' invitation to view this excerpt from Duncan's deposition as evidence that he did not appear before a notary and swear to the truth of the contents of his affidavit.

### CONCLUSORY STATEMENTS

 Appellants contend that several of the statements in the affidavits offered to support Aledo's and Norman's summary judgment motions are conclusory in nature. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Rodriguez v. Wal–Mart Stores, Inc.,* 52 S.W.3d 814, 823 (Tex.App.-San Antonio 2001), *rev'd on other grounds,* 92 S.W.3d 502 (Tex.2002); *Dolcefino,* 19 S.W.3d at 930; *Rizkallah,* 952 S.W.2d at 587. A "conclusory" statement may set forth an unsupported legal conclusion or an unsupported factual conclusion. *See Rizkallah,* 952 S.W.2d at 587.

### 1. Factual Conclusions

 Appellants contend that the affidavit of Kenneth Cunningham contains unsubstantiated factual conclusions. Cunningham stated in his affidavit, "I made a telephone call to the number advertised on a billboard in front of the development. I spoke with Defendants' agent...." Cunningham made two other references to telephone conversations he had with "an agent for Defendants." Cunningham explained the source for the telephone number. Thus, his "conclusory" statements that he spoke with an agent of the Defendants have factual support in the affidavit. *See Rizkallah,* 952 S.W.2d at 588.

 Appellants aver that the affidavit of Wayne Thompson contains unsubstanti-

ated factual conclusions. According to the affidavit, Thompson is a custodian of records for the Parker County Appraisal District. Appellants object to his statement that the records attached to his affidavit are "exact duplicates of the originals." Appellants argue that this statement is conclusory because Thompson did not state "that he was present in October 1962" when the "originals" were prepared. They contend that this alleged deficiency renders Thompson's affidavit and the attached records "wholly unreliable." We disagree with Appellants' assessment. As custodian of records, Thompson bears the responsibility of being familiar with those records, even if he was not present when they were created. Therefore, his statement that he is a custodian of records for the appraisal district provides adequate factual support for this allegedly "conclusory" statement.

■ Appellants next complain of Thompson's statements that a map attached to his affidavit "depicts the boundary lines of the Granbury Independent School District and Aledo Independent School District as they relate to the Hills of Bear Creek development" and these boundaries have existed "since at least October 6, 1962." Another document attached to Thompson's affidavit is an excerpt of minutes from an October 6, 1962 school board meeting in which Aledo annexed a portion of the Bluff Springs Common School District No. 19. These minutes include a metes and bounds description of the property annexed.

An appraisal district "is responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." Tex. Tax Code Ann. § 6.01(b) (Vernon 2001). A school district is a "taxing unit." Id. § 1.04(12) (Vernon 2001). Thus, the Parker County Appraisal

District must be aware of which taxing units are located in the appraisal district.

To perform its task, an appraisal district must maintain records "listing all property that is taxable in the district." Id. § 25.01(a) (Vernon 2001). "Property shall be described in the appraisal records with sufficient certainty to identify it." Id. § 25.03(a) (Vernon 2001). Historically, local officials have relied on maps as a part of their records to satisfy these requirements. E.g., Carson v. Johnston, 57 S.W.3d 657, 659 (Tex.App.-Eastland 2001, no pet.); Frossard v. State, 497 S.W.2d 473, 475 (Tex.Civ.App.-Dallas 1973, writ ref'd n.r.e.); Haynes v. State, 44 Tex.Civ. App. 492, 497, 99 S.W. 405, 408 (1906, writ ref'd). Moreover, an appraisal district must necessarily rely on school district records when determining the boundaries of a particular school district, particularly when an annexation occurs as in this case.

Thompson stated in his affidavit that the attached records are part of the appraisal district's records. His identification of himself as a custodian of records for the appraisal district provided an adequate factual basis for his statement that the map attached to his affidavit depicts the school districts' boundaries as they relate to the property at issue and that these boundaries have existed since at least 1962.

### 2. Legal Conclusions: Personal Knowledge and Competence

■ Appellants objected to all four of the affidavits attached to Aledo's and Norman's summary judgment motions because the affiants in each one stated that they had "personal knowledge" of the facts stated and were "fully competent" to make the affidavits. Appellants cite Estate of Diggs v. Enterprise Life Insurance Co. for the proposition that these statements are improper legal conclusions. 646 S.W.2d 573

(Tex.App.-Houston [1st Dist.] 1982, writ ref'd n.r.e.).

The court in *Estate of Diggs* observed in pertinent part:

A recitation that the affiant is of legal age, has never been convicted of a felony and is making the affidavit on personal knowledge as recited in Cole's affidavit, is not in itself sufficient to show affirmatively that an affiant is competent to testify, as required by Tex.R. Civ. P. 166–A(e).

*Id.* at 575. This case does not stand for the proposition asserted by Appellants.

Moreover, the Supreme Court has expressly recommended that certain affidavits commence with the type of language Appellants now challenge. *E.g.,* TEX.R. EVID. 902(10)(b) (prescribing form for business records affidavit).[5]

For the foregoing reasons, we hold that the challenged statements do not constitute improper legal conclusions.

### 3. Other Legal Conclusions

▆▆▆ Appellants contend that the first, second and last sentences of the sixth paragraph of Norman's affidavit are improper legal conclusions. Paragraph 6 reads as follows:

6. "My issuance of this April 2, 1996 letter to Mr. Duncan was within the course and scope of my duties as the superintendent of Aledo ISD. I knew prior to my issuance of the April 2, 1996 letter that Parker County, before it would approve any plats for new subdivisions in Aledo ISD, required a letter from me as superintendent of Aledo ISD stating that the new subdivision at issue

was situated within the boundaries of Aledo ISD. Further, I am aware that Section 11.06 of the Parker County Subdivision Regulations provides that developers of subdivisions, before they can obtain approval from the Parker County Commissioners of a plat for a new subdivision within the County, must present a letter from the superintendent of a school district to indicate that school bus service is available to homes in the subdivision to be platted. For school bus service to be provided to a residence, that residence must be located within the school district providing the bus service and education to the children of the residence. Therefore, it was my duty as the superintendent of Aledo ISD to issue the April 2, 1996, letter to Mr. Duncan."

The second sentence does not assert a legal conclusion. Rather, Norman merely recites the role Parker County requires of a school superintendent when a new subdivision is being platted.

Regarding the first and last sentences, appellate courts have consistently held that a statement that a particular act lies within the course and scope of an affiant's duties is an improper legal conclusion if the affiant does not provide facts to support the conclusion stated. *See Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 360–61 (Tex.1971); *Montemayor v. Chapa,* 61 S.W.3d 758, 764 (Tex. App.-Corpus Christi 2001, no pet.); *Aldridge v. De Los Santos,* 878 S.W.2d 288, 297 (Tex.App.-Corpus Christi 1994, writ dism'd w.o.j.). Norman's statements regarding Section 11.06 of the Parker County Subdivision Regulations provide an adequate factual basis for his statement that

---

**5.** According to Rule of Evidence 902(10)(b), a business records affidavit should include a paragraph which reads as follows:

My name is _____, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

TEX.R. EVID. 902(10)(b). The language recommended by the Supreme Court would run afoul of Appellants' objections.

writing the letter for Duncan fell within the course and scope of his duties as superintendent. Accordingly, we hold that the first and last sentences in the sixth paragraph of Norman's affidavit do not constitute improper legal conclusions.

## SUMMARY

Appellants failed to preserve their objections to the form of Aledo's and Norman's summary judgment proof for our review. Their objections to the substance of the summary judgment proof are without merit. Accordingly, their first issue is without merit.

## SUMMARY JUDGMENT MOTIONS

Appellants' third and fourth issues respectively challenge the court's granting of Appellees' first and second summary judgment motions. Appellants assert numerous reasons they contend Appellees failed to conclusively establish their entitlement to judgment.

### STANDARD OF REVIEW

■ To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Prop. Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Fletcher v. Edwards*, 26 S.W.3d 66, 73 (Tex.App.-Waco 2000, pet. denied). We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965); *Fletcher*, 26 S.W.3d at 73. We indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in its favor. *See American Tobacco*, 951 S.W.2d at 425; *Fletcher*,

26 S.W.3d at 73. "When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Fletcher*, 26 S.W.3d at 74.

### BREACH OF CONTRACT

■ Appellants allege in their petition that Aledo breached an agreement with Choctaw created by Aledo's acceptance of ad valorem taxes from Choctaw and by the April 1996 letter from Norman. Aledo contended in its second summary judgment motion that Appellants cannot prevail on their contract claim because: (1) Choctaw made no offer in exchange for the letter; (2) there was no meeting of the minds; and (3) Choctaw offered no consideration for the alleged promises made.

Frazier states in his affidavit that Choctaw paid ad valorem taxes to Aledo for the property the Cunninghams bought. Aledo does not dispute in either of its summary judgment motions that Choctaw paid ad valorem taxes to Aledo on the property in question. Neither does Aledo dispute the existence or content of Norman's letter.

■ Settled law establishes that the requisites for a valid contract are: "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *New Caney Indep. Sch. Dist. v. Burnham Auto-Country, Inc.*, 30 S.W.3d 534, 537 (Tex. App.-Texarkana 2000, pet. denied); *accord Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex.App.-San Antonio 1999, pet. denied).

■ To determine whether there was a meeting of the minds, a court reviews in an objective fashion "what the parties actually

said and did" without consideration of subjective intent. *New Caney Indep. Sch. Dist.*, 30 S.W.3d at 538 (quoting *Copeland*, 3 S.W.3d at 604). "[T]he court looks to the communications between the parties and to the acts and circumstances surrounding those communications." *Copeland*, 3 S.W.3d at 605.

Here, Choctaw paid ad valorem taxes as it was obligated by law to do. Norman issued the letter as he believed the Parker County ordinance required him to do. Even indulging all reasonable inferences and resolving all doubts in Appellants' favor, we cannot agree that the conduct by the parties in this regard raises a genuine issue of material fact on the question of whether the parties had a meeting of the minds. Accordingly, we hold that Aledo conclusively established that the parties did not form a contract.

### DECLARATORY RELIEF/ESTOPPEL

■ Appellants' claim against Aledo for declaratory relief rests in their contention that Aledo is estopped to deny that the Cunninghams' property lies in the Aledo district because Aledo collected ad valorem taxes paid by Choctaw with reference to the property in question and because Norman's letter states that the property lies within the Aledo district. Aledo contended in its second summary judgment motion that it is entitled to judgment as a matter of law on Appellants' estoppel claim because a school district is not subject to estoppel. Appellants aver in their fourth issue that a genuine issue of material fact remains on the question of whether Aledo is estopped to deny that the Cunninghams'

property lies within the district's boundaries.

■ Generally, a governmental unit is not subject to estoppel in the exercise of its governmental functions. *Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 888 (Tex.1990); *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 595 (Tex. App.-Austin 1991, writ denied). The Court in *Bowman* described the exception to this general rule by stating that "municipalities and similar local units of government 'may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions.'" 801 S.W.2d at 888 (quoting *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex.1970)); *accord Dillard*, 806 S.W.2d at 595.

■ Public school districts perform only governmental functions. *Canutillo Indep. Sch. Dist. v. Olivares*, 917 S.W.2d 494, 496 (Tex.App.-El Paso 1996, no writ); *Dillard*, 806 S.W.2d at 594; *Braun v. Trustees of Victoria Indep. Sch. Dist.*, 114 S.W.2d 947, 949–50 (Tex.Civ.App.-San Antonio 1938, writ ref'd) (citing TEX. CONST. art. VII, § 1).[6] For this reason, the Austin Court of Appeals determined in *Dillard* that school districts are subject only to estoppel claims which sound in contract. 806 S.W.2d at 595 & n. 8; *see also La Villa Indep. Sch. Dist. v. Gomez Garza Design, Inc.*, 79 S.W.3d 217, 221–22 (Tex.App.-Corpus Christi 2002, pet. denied) (school board estopped from denying superintendent authorized to sign contract sued on). We agree with this reasoning.

We have already determined that Choctaw did not have a contract with Aledo.

---

**6.** Article VII, § 1 of the Texas Constitution provides:

> A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty

of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.

TEX. CONST. art. VII, § 1.

Accordingly, Aledo conclusively established that it cannot be estopped to deny that the Cunninghams' property lies within the district's boundaries.

PROFESSIONAL SCHOOL EMPLOYEE IMMUNITY

 Norman argued in his first summary judgment motion that he is immune from all of Appellants' claims under the former section 22.051 of the Education Code.[7] Appellants contend in their third issue that Norman failed to conclusively establish that writing the April 2 letter was within the scope of his duties as superintendent.

Section 22.051(a) exempts a professional employee[8] of a school district from personal liability "for any act that is incident to or within the scope of the duties of the employee's position." Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 22.051(a), 1995 Tex. Gen. Laws 2207, 2283 (amended 2003) (current version at TEX. EDUC.CODE ANN. § 22.0511(a) (Vernon Supp.2004)). Norman stated in his affidavit that issuance of the letter was within the scope of his duties as superintendent because: (1) Parker County requires a letter from the superintendent of the school district within which a new subdivision lies before the county will approve the subdivision plat; (2) section 11.06 of the Parker County Subdivision Regulations requires a letter from the superintendent indicating that bus service will be available to homes in

the new subdivision as a prerequisite to plat approval; and (3) Aledo does not provide bus service to students living in another school district.

Section 11.06 of the Parker County Subdivision Regulations states, "Subdividers must present a signed statement from the appropriate school district regarding the availability of school bus service. This must accompany the plat before final approval will be given."

By statute, the superintendent "is the educational leader and the chief executive officer of the school district." TEX. EDUC. CODE ANN. § 11.201(a) (Vernon Supp.2004). The duties of a superintendent are statutorily defined. Section 11.201 of the Education Code provides in pertinent part that a superintendent's duties include "managing the day-to-day operations of the district as its administrative manager." TEX. EDUC.CODE ANN. § 11.201(d)(5) (Vernon Supp.2004).

 We have already rejected Appellants' challenges to the form and substance of Norman's summary judgment proof. Appellants summarily contend in their brief and in their response to Norman's summary judgment motion, "In this case, Norman has failed to establish that he had any duty to issue that April 2, 1996 letter or any duty to determine whether the Property was within AISD's boundaries."[9]

7. In 2003, the Legislature renumbered the former section 22.051(a) as section 22.0511(a) without substantive change. *Compare* TEX. EDUC.CODE ANN. § 22.0511(a) (Vernon Supp. 2004) *with* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2283. Because Appellants filed suit before the effective date of the amendment, we refer to the statute hereinafter as "section 22.051(a)." *See* Act of May 29, 2003, 78th Leg., R.S., ch. 1197, § 7, 2003 Tex. Gen. Laws 3404, 3406.

8. A superintendent is by definition a "professional employee." Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 22.051(c)(1), 1995 Tex. Gen. Laws 2207, 2283 (amended 2003) (current version at TEX. EDUC.CODE ANN. § 22.051(a)(1) (Vernon Supp.2004)).

9. Appellants add in their reply brief that Norman failed to conclusively establish his entitlement to immunity under section 22.051(a) because his affidavit "does not establish that he was an employee of Parker County, that the Parker County regulations governed him or determined his job responsibilities as Su-

According to the summary judgment record, the Cunninghams' property lies in Parker County. Parker County requires developers to obtain documentation from the school district in which a new subdivision lies indicating whether the district will provide bus service to children in the subdivision. As Aledo's chief executive officer, Norman clearly possessed the authority to issue a letter confirming that Appellants' subdivision lay within Aledo's boundaries, thus indicating that Aledo would provide bus service to children in the subdivision.

For the foregoing reasons, we conclude that Norman conclusively established that issuance of the April 2 letter was within the scope of his duties as Aledo's superintendent. *See Williams v. Chatman,* 17 S.W.3d 694, 699 (Tex.App.-Amarillo 1999, pet. denied) (school employees' summary judgment affidavits established as a matter of law that they were acting within the scope of their duties on the occasion in question).

## CONCLUSION

Aledo conclusively established that the parties did not have a contract and that it cannot be estopped to deny that the Cunninghams' property lies in another school district. Norman conclusively established that he is entitled to the statutory immunity provided by section 22.051(a) of the Education Code.

These grounds are dispositive of all of Appellants' claims against Aledo and Norman. The trial court did not specify the basis for its ruling. Accordingly, we need not address the other grounds presented

perintendent of Aledo Independent School District, or that his job duties involved or included the issuance of the April 2, 1996, letter." However, Appellants raised these contentions in their summary judgment pleadings only in response to Norman's assertion of official immunity. Thus, we do not

in the summary judgment motions. *See Star–Telegram,* 915 S.W.2d at 473; *Fletcher,* 26 S.W.3d at 74. Thus, Appellants' third and fourth issues are without merit.

We affirm the judgment.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

I have carefully considered the issues raised by the appellants. I approached the review of the issues raised on appeal, however, in a manner different than my colleague. After reviewing the basis upon which summary judgment was sought, I reviewed the summary judgment evidence to determine if the judgment could be affirmed on any of those theories. I then reviewed the objections to only the summary judgment evidence necessary to support the theory on which the judgment would be proper. I then proceeded to determine whether as to the evidence necessary to affirm the judgment, on a theory sought in the summary judgment motion, if the trial court erred in what would be of necessity an implied overruling of the objection to that evidence. Having determined there were no errors in the implied rulings on evidence that would be essential to affirm the summary judgment under a proper theory, I was able to determine that the trial court's judgment is proper. I find it unnecessary to join in the review of the evidence and issues in the manner conducted by colleague and, therefore, do not join in that discussion, analysis, or holdings regarding many issues unnecessary to a disposition of this appeal. I do,

consider these assertions in deciding Norman's claim of immunity under section 22.051(a). *See* Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 (Tex.1993); *Fletcher v. Edwards,* 26 S.W.3d 66, 74 (Tex.App.-Waco 2000, pet. denied).

however, concur in the judgment of affirming the trial court's judgment.